# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANASTASIA SAYDLIN, | : | Civil No. 1:22-CV-00386 |
| Petitioner, | : | |
| v. | : | |
| NATHANIEL J. S. ASHBY and BETTY ASHBY, | : | |
| Respondents. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court is a motion, filed by Petitioner Anastasia Saydlin ("Saydlin"), to dismiss this action pursuant to Federal Rule of Civil Procedure 41, Local Rule 41.1, and Federal Rule of Civil Procedure 12(b)(1). (Doc. 54.) For the reasons that follow, the court will grant the motion.

### **BACKGROUND**[1]

This action arises under the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention") and the International Child Abduction Remedies Act ("ICARA") based on the alleged wrongful retention of Petitioner Anastasia Saydlin's minor child by Respondents. (Doc. 1.) Since this case was filed on March 15, 2022, the court has taken measures to ensure the expeditious resolution of the case. Initially, the court entered a case management

---

[1] Because the court is writing for the benefit of the parties, only the necessary information is included in this order. Any additional factual recitation that is necessary for the discussion of each specific issue is included in the Discussion section of this memorandum.

1

order on March 21, 2022, which scheduled a bench trial on May 20, 2022. (Doc. 8.) On March 31, 2022, at the request of the parties, the court held an interim custody hearing to set an interim custody schedule for the minor child during the pendency of this case. (Doc. 13.) Following the hearing, the court entered an interim custody order on the same date. (Doc. 14.)

On April 6, 2022, Respondents filed an answer to Saydlin's complaint. (Doc. 15.) On April 12 and 13, 2022, Respondents retained new counsel and filed a letter requesting, inter alia, a continuance, noting that Respondents' prior counsel failed to adequately engage in discovery or otherwise prepare this case to proceed to a bench trial. (Docs. 16, 17, 18, 19.) In response, the court scheduled a telephonic status conference to discuss the schedule for the case and Respondents' request to amend their answer. (Doc. 26.) During this conference, the court discussed the urgent nature of this case, but determined that an amended case management order would be appropriate to avoid prejudicing Respondents. (Doc. 27.) Accordingly, the court continued the bench trial in this case to July 5–6, 2022, and established other interim deadlines, noting that in no event would the court consider further continuances of this trial date. (*Id.*)

On May 9, 2022, the court granted Respondents' motion to amend their answer. (Doc. 34.) Their amended answer was docketed the same day. (Doc. 35.) On June 27, 2022, the court issued an amended case management order. (Doc. 41.)

That order maintained the scheduling of the two-day bench trial for July 5–6, 2022. (*Id.*) On June 28, 2022, the parties filed a notice of settlement, and on the following day, the court issued an order by consent of the parties (the "Consent Order"). (Docs. 42, 43.)

The Consent Order vacated the two-day bench trial. (Doc. 43, ¶ 5.) It also ordered that, "[b]y agreement of the parties, the terms of the parties' agreement with respect to the child set forth in Paragraph 7(A)-(P) below shall be mirrored forthwith in the appropriate family courts in Israel and Pennsylvania. All parties shall fully cooperate with the mirroring process in Israel and Pennsylvania." (*Id.* ¶ 2.) The referenced paragraphs provided, in part, that the minor child would primarily reside with Saydlin in Israel and that Saydlin and First Respondent Nathaniel Ashby ("Nathaniel Ashby") would have joint legal custody of the minor child. (*Id.* ¶ 7(A)(i)–(ii).) Paragraph 7(P)(i) of the Consent Order provided that Saydlin was permitted to return to Israel with the minor child. (*Id.* ¶ 7(P)(i).) Lastly, paragraph 7(P)(ii) provided that the "parties agree that all custody matters between the parties regarding the Child shall be transferred to the appropriate jurisdiction in Israel." (*Id.* ¶ 7(P)(ii).)[2] On July 8, 2022, the court issued another

---

[2] The Consent Order is silent with respect to whether this court retains jurisdiction over this action.

3

order, also by consent of the parties, to release the passport of the minor child to Saydlin. (Doc. 45.)

On or about August 1, 2022, the parties filed a joint motion for a mirror order in Israeli court. (Doc. 58, pp. 2–3.)[3] On August 8, 2022, the Israeli judge issued a decision that, in Respondents' words, asked for a legal basis for granting relief. (*Id.* at 3.) On August 21, 2022, Respondents submitted a brief in support of the mirror order. (*Id.*) On August 22, 2022, Saydlin, at that time proceeding pro se, filed a brief with the Israeli court in which she asserted that there were problems with the translation of the proposed mirror order and also disputed the legal basis for the mirror order. (Doc. 57, pp. 5–6; Doc. 58, p. 3.) Sadylin's actual language, "requesting that the within proceedings be brought before the Israeli court 'lawfully,'" was opaque to all concerned, including the Israeli judge, who requested briefing on her arguments. (Doc. 57, p. 6; Doc. 58, p. 3.)

Through new counsel, Saydlin submitted a brief in which she argued that: (1) the mirror order was procedurally and substantively faulty and had no basis in Israeli law; (2) the correct procedure would have been through an enforcement of foreign judgment; and (3) she did not believe the proposed order would satisfy the

---

[3] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

requirements for such enforcement under Israeli law.[4]  (Doc. 57, p. 6; Doc. 58, p. 3.)  According to Respondents, Saydlin also argued that the Consent Order was outside of this court's jurisdiction and that the Order had been authored entirely by Respondents' counsel.  (Doc. 58, p. 3.)

Meanwhile, in this court, on September 15, 2022, counsel for Respondents filed a letter notifying the court of the case's status with respect to dismissal.  (Doc. 47.)  The letter informed the court that, although the parties had resolved their divorce and financial issues in Pennsylvania courts pursuant to the court's Consent Order, the Israeli court had not yet mirrored the relevant custody terms.  (*Id.*)  Counsel notified the court that Saydlin was no longer represented by counsel in Israel and had argued against the mirroring of terms of the Consent Order.  (*Id.*)[5]

In Israel, the judge scheduled a preliminary hearing for January 11, 2023.  (*Id.* at 4.)  In November 2022, before the hearing occurred, Saydlin filed a motion in Israeli court for sole decision-making authority on behalf of the minor child.

---

[4] According to Respondents, Saydlin's brief also argued that the order to be mirrored was not registered in Pennsylvania and that one or both Respondents had sexually abused the minor child. (Doc. 58, p. 3.)  Of note, Respondents' brief alternatively refers to the plural Respondents and the singular Respondent without identifying who the latter is.  The court assumes that references to the singular Respondent are directed towards First Respondent Nathaniel Ashby, the minor child's father.

[5] Saydlin disputes this characterization and argues that she has complied with all provisions of the Consent Order including filing a joint application with Respondents for a mirror order in the Israeli court. (Doc. 59, p. 2.)  She argues that the Israeli court did not approve such order because it determined there was no legal authority or basis for that procedure. (*Id.* at 2–3.)

(Doc. 57, p. 7; Doc. 58, p. 4.) The January 11, 2023 hearing occurred, but the judge decided not to rule on the mirror order or Consent Order. (Doc. 57, p. 7; Doc. 58, p. 4.) Instead, at the conclusion of the hearing, the judge provided Nathaniel Ashby 14 days to give the court notice of his position. (Doc. 57, p. 8; Doc. 57-2, p. 4.)

There is no indication that Nathaniel Ashby provided notice to the court, but on January 16, 2023, he proposed a new settlement agreement. (Doc. 57, p. 8; Doc. 58, p. 4.) Saydlin rejected the proposal. (Doc. 58, p. 5.)

In this court, on March 16, 2023, Respondents filed a motion asking the court to find Saydlin in contempt of the Consent Order. (Doc. 48.) In that motion, Respondents moved for a finding of contempt, requested an evidentiary hearing to determine the merits of the Petition, and requested that the court find that the minor child should not be permitted to remain in Israel. (*Id.*)

On July 4, 2023, an Israeli court issued a judgment granting custody to Saydlin. (Doc. 57, p. 9; Doc. 58, p. 5.)[6] Then, on July 25, 2023, Saydlin filed the instant motion to dismiss in this court. (Doc. 54.) On the same day, the court held a telephonic conference to discuss the status of the case. (Doc. 56.) Regarding voluntary dismissal under Federal Rule of Civil Procedure 41(a), Respondents

---

[6] Respondents' brief states that the Israeli court awarded custody to "Respondent." (Doc. 58, p. 5.) The court assumes this is a typographic error, and that, based on the facts alleged and arguments raised by the parties, Respondents meant "Petitioner."

6

acknowledged that they have no counterclaims. (*Id.*) The court indicated to the parties that, following the call, it would first address the motion to dismiss. Then, if the court determines it has subject matter jurisdiction, it will rule on the motion for contempt.

On August 8, 2023, Saydlin filed a brief in support of her motion to dismiss. (Doc. 57.) Respondents filed their brief in opposition on August 22, 2023, and Saydlin filed a reply on September 5, 2023. (Docs. 58, 59.) The motion is ripe for disposition.

### STANDARD OF REVIEW

Saydlin seeks dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. When subject matter jurisdiction is challenged, the "burden of establishing federal jurisdiction rests with the party asserting its existence." *Lincoln Ben. Live Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006); *Genentech, Inc. v. Amgen Inc.*, 310 F. Supp. 3d 467, 469 (D. Del. 2018).

Rule 12(b)(1) challenges may be "facial" or "factual." *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial attack challenges whether jurisdiction has been properly pleaded and requires the court to "only consider the allegations of the complaint and documents referenced therein

and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen*, 549 F.2d at 891.)  Conversely, when a defendant sets forth a factual attack on subject-matter jurisdiction, "the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case. . . . 'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Carpet Grp. Int'l v. Oriental Rug Imps. Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000) (quoting *Mortensen*, 549 F.2d at 891).

In this case, Saydlin challenges whether this court retains jurisdiction via the Hague Convention and enabling statute after the parties stipulated to the minor child returning to Israel and the Israeli court entering a custody order.  Thus, this case presents a factual attack on subject-matter jurisdiction.  *See Rohrbaugh by & through Rohrbaugh v. Lincoln Intermediate Unit*, 255 F. Supp. 3d 589, 592 (M.D. Pa. 2017).  As a result, the court will weigh the Respondents' allegations without presuming truthfulness in order to determine the merits of the jurisdictional claim.

## DISCUSSION

As the Third Circuit has described, the Hague Convention is "a multilateral treaty on parental kidnapping to which the United States" is a signatory. *Yang v. Tsui*, 416 F.3d 199, 201 (3d Cir. 2005).  The treaty's goal is to "protect children

internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access." *Id.* (quoting Hague Convention, Preamble, 19 I.L.M. 1501, 1501 (1980)).

With certain exceptions, the Hague Convention provides that "a child abducted in violation of 'rights of custody' must be returned to the child's country of habitual residence." *Abbott v. Abbott*, 560 U.S. 1, 5 (2010). The United States is a contracting state to the Hague Convention, which Congress has implemented through the ICARA, 22 U.S.C. § 9001 *et seq. Abbott*, 560 U.S. at 1.[7]

Section 9003 of the ICARA provides for judicial remedies and grants state and federal district courts concurrent original jurisdiction under the Hague Convention. § 9003(a). It provides that a person may file a petition to initiate proceedings for the return of a child or "for arrangements for organizing or securing the effective exercise of rights of access to a child." § 9003(b).

Thus, through the Hague Convention and the ICARA, a petitioner "claiming that a child has been wrongfully removed or retained in the United States can commence judicial proceedings." *Yang v. Tsui*, 499 F.3d 259, 270 (2007). In such an instance, a court must answer four questions:

> (1) when the removal or retention took place; (2) the child's habitual residence immediately prior to such removal or retention; (3) whether

---

[7] At the time of *Abbott*, the ICARA was cited at 42 U.S.C. § 11601 *et seq.*

the removal or retention breached the petitioner's custody rights under the law of the child's habitual residence; and (4) whether the petitioner was exercising his or her custody rights at the time of removal or retention.

*Id.* at 270–71.

Saydlin argues that the court should dismiss this action pursuant to Federal Rule of Civil Procedure 41, Local Rule 41.1, and Federal Rule of Civil Procedure 12(b)(1). The court addresses these arguments below.

### A. The court will not dismiss this case under Rule 41.

With respect to Rule 41, Saydlin offers no analysis whatsoever as to why the court should allow for the voluntary dismissal of this action. (Doc. 57, pp. 10–11.) Instead, she merely provides a block quote of Rule 41(a)(2), which provides for dismissal of certain legal actions by a court order:

> *By Court Order; Effect.* Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

Rule 41(a)(2). The court established, during a conference with the parties, that Respondents have no counterclaims. (Doc. 56.) But, in light of Saydlin's

10

complete failure to assert substantive argument under this rule, the court will not dismiss under Rule 41(a)(2).[8]

### B. The court will not dismiss this case under Local Rule 41.1.

Saydlin next argues that the court should dismiss this case under Local Rule 41.1. As with her previous argument, she quotes in full Local Rule 41.1, which provides as follows:

> Any action may be dismissed by the court at any time no proceedings appear to have been taken for one full calendar year. At least twenty eight (28) days written notice of such intended dismissal shall be given to all parties by the judge to whom such action is assigned, or by the clerk, and the action shall thereafter be dismissed, unless for good cause it shall be shown that the action should not be dismissed. Dismissal under this rule shall be in addition to and not in lieu of action which may be taken under Fed.R.Civ.P.41.

Local Rule 41.1. Saydlin argues that, at the time of her brief, August 2023, it had been more than a year since this court's last proceeding. (Doc. 57, p. 11.) The court's last proceeding, she asserts, was the bench trial scheduled for July 5–6, 2022, which was cancelled pursuant to the Consent Order. (*Id.*) She asserts that there have been no proceedings since then. (*Id.*) Further, she asserts that the Israeli court assumed jurisdiction over this action in the verdict it entered on July 4, 2023. (*Id.*) Therefore, she requests that this court dismiss the action pursuant to Local Rule 41.1. (*Id.*)

---

[8] "[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived." *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997).

On March 16, 2023, Respondents filed a motion in this court. (Doc. 48.) That motion requested a hearing. (*Id.*) That motion was filed less than one calendar year since the previous proceeding in this court. Saydlin has made no argument to the contrary. The court will not prejudice Respondents, and penalize them under Local Rule 41.1, simply because this court found it prudent to stay resolution of their motion for contempt instead of immediately scheduling the hearing they requested. Therefore, the court will not dismiss this action on the basis of Local Rule 41.1.

## C. The court will dismiss this action for lack of subject matter jurisdiction.

Lastly, Saydlin asserts that this court lacks subject matter jurisdiction over this matter. (Doc. 57 at pp. 11–17.) Her argument is not developed in her initial brief and mostly consists of reciting various rules for subject matter jurisdiction. (*Id.* at 12–15.) Saydlin asserts that, "[o]f particular importance is the position taken by the First Respondent in the Israeli Family Court proceedings. Initially he states in Exhibit 'B' that he had no intention of going to Israel because 'he feared that she would stop him from leaving the Country.'" (*Id.* at 16.) But, Saydlin goes on to explain, the Israeli court "provided safeguards for those visits" although Nathaniel Ashby did not change his position. (*Id.*) She further asserts that Nathaniel Ashby "was provided with an opportunity to consult with his counsel in the United States, but even with the additional time, First Respondent, at the

12

announcement of the Verdict on July 4, 2023, the Court stated that 'The Defendant did not submit a Statement of Defense,' and when asked the Defendant stated that 'he has no intention of coming to Israel.'" (*Id.*)[9]

Finally, Saydlin argues that, "[g]iven the First Respondent's/Defendant's representations, the Israeli court acted upon the best interest of the child, and while it offered First Respondent with a path forward that involved his appearance in Israel (where he agreed in the Consent Order that Israel had jurisdiction over custody), First Respondent has declined to do so." (*Id.*) In her initial brief in support of her motion to dismiss, Saydlin makes no attempt to explain why these assertions deprive this court of subject matter jurisdiction.

Respondents supply two counterarguments. They argue that this dispute is still a live controversy, and that the Israeli custody order is irrelevant to this action. (Doc. 58, pp. 6–10.) The court will address these in turn.

First, Respondents assert that this action is still a live dispute because the terms of the Consent Order were never mirrored in Israel. (*Id.* at 6.) Respondents construe Saydlin's argument to be that this dispute is moot because the minor child is in Israel and the Israeli court has now issued a custody order. (*Id.*) But, Respondents argue, under *Chafin v. Chafin*, 568 U.S. 165 (2013) and *Redmond v.*

---

[9] In resolving the instant motion, the significance of these assertions is not apparent to the court.

13

*Redmond*, 724 F.3d 729 (7th Cir. 2013), the court should deny the motion to dismiss. (*Id.*)

Respondents argue that, in *Chafin*, the Supreme Court held that a child's return will not moot a case where a party can obtain even partial relief. (*Id.* (citing 568 U.S. at 173).) Under the language of the treaty, the purpose of the Hague Convention is to "to secure the prompt return of children wrongfully removed to or retained in any Contracting State and to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." 568 U.S. at 168 (cleaned up) (citation omitted).

In *Chafin*, a mother petitioned under the Hague Convention and ICARA. The district court concluded that Scotland was the country of the child's habitual residence and accordingly granted the mother's petition for the child's return there. *Id.* at 170–71. The father timely moved for a stay pending appeal, but the court denied his motion. *Id.* at 171. The mother returned to Scotland with the child, and there the court granted her interim custody and issued a preliminary injunction which prohibited the father from removing the child. *Id.*

The Eleventh Circuit dismissed the father's appeal as moot. *Id.* It reasoned that, upon the child's return to a foreign country, the court had become powerless to grant relief. *Id.* The Supreme Court disagreed. *Id.* at 173. The father sought a reverse of the trial court's determination that the minor child's habitual residence

was Scotland and, "if that determination is reversed, an order that E.C. be returned to the United States (or 're-return,' as the parties have put it)." *Id.*

The mother argued that the case was moot because "the District Court lack[ed] the authority to issue a re-return order either under the Convention or pursuant to its inherent equitable power." *Id.* at 174. But that argument, the Supreme Court observed, "which goes to the meaning of the Convention and the legal availability of a certain kind of relief—confuses mootness with the merits." *Id.* The mother also argued that any order of re-return which the district court issued would be ineffectual and would be ignored by Scottish courts. *Id.* The Court found that this argument did not moot the case either. *Id.* at 174–75. It observed that U.S. courts continued to have personal jurisdiction over the mother and could "command her to take action even outside the United States, and may back up any such command with sanctions." *Id.* at 175 (citation omitted).

Second, Respondents argue that the Israeli custody order is irrelevant with respect to whether this court has jurisdiction over this action. (Doc. 58, p. 8.) The Hague Convention, they argue, is not a treaty to enforce foreign custody orders. (*Id.*) Therefore, the existence of such an order makes no difference to this court's jurisdiction. (*Id.* (quoting *Redmond*, 724 F.3d at 741) ("The Hague Convention targets international child abduction; it is not a jurisdiction-allocation or full-faith-and-credit treaty. It does not provide a remedy for the recognition and

enforcement of foreign custody orders or procedures vindicating a wronged parent's custody rights more generally.").)

To support this argument, Respondents cite *Miller v. Miller*, 240 F.3d 392 (4th Cir. 2001), in which a Hague Convention petition was filed after Canadian and U.S. courts issued competing custody orders. (*Id.* at 9.) In that case, the existence of custody orders was irrelevant to the court's determination of which country was the child's habitual residence. 240 F.3d at 399. Respondents argue that Hague Convention cases are not focused on establishing substantive custody law but instead act as "a forum selection mechanism, operating on the principle that the child's country of habitual residence is best placed to decide upon questions of custody and access." (Doc. 58, p. 10 (cleaned up) (quoting *Barzilay v. Barzilay*, 600 F.3d 912, 916–17 (8th Cir. 2010)).). Accordingly, the "purpose of proceedings under the Hague Convention is neither to establish nor enforce custody rights but instead is limited to giving a reasoned determination "of where jurisdiction over a custody dispute is properly placed." (*Id.* (quoting *Barzilay*, 600 F.3d at 916–17).)

In response, Saydlin argues in her reply brief that *Chafin* and *Redmond* are distinguishable, because in those cases the parties contested where the children would reside and what country had jurisdiction over the children. (Doc. 59, p. 9.) But here, the parties agreed that the minor child would reside primarily in Israel

with Saydlin and that Israel would have jurisdiction over all custody matters in this case, which the Israeli court has exercised. (*Id.*)  Therefore, unlike the cases upon which Respondents rely, this case presents no live dispute pursuant to the Hague Convention. (*Id.*)  Instead, Saydlin argues, Nathaniel Ashby is seeking to reverse the terms of the Consent Order on the basis of a technicality—that the Israeli law does not permit the entry of a mirroring order. (*Id.*)  Saydlin also argues that Nathaniel Ashby "took no steps to conform to Israel's required procedures, nor did he participate in the final hearing." (*Id.*)

Next, Saydlin argues that Respondents are incorrect in their assertion that the Israeli court's custody order is irrelevant. (*Id.* at 10–12.)  She argues that *Miller* does not support Respondents' arguments.  Unlike in *Miller*, the present dispute has no competing orders. (*Id.* at 12.)  Instead, the parties agreed that Israel had jurisdiction over custody issues and the only custody order is the Israeli order. (*Id.*)

Regarding Respondents' first argument, Saydlin is correct insofar as the present instance is distinguishable from *Chafin* and *Redmond*.  In this case, Respondents are not appealing this court's independent determination of the minor child's habitual residence nor this court's return order.  Respondents are not appealing any decision by this court.  Rather Respondents are seeking to revisit or enforce, a stipulated order, which this court approved.

17

Respondents, as the parties seeking to invoke subject matter jurisdiction, have the burden of establishing that this court has subject matter jurisdiction. Their reliance on *Chafin* shows that U.S. courts retain jurisdiction where a party appeals a district court's determination of habitual residence and its associated return order. But that is not what happened here. Instead, the parties agreed that Saydlin and the subject child would return to Israel and Israel would have jurisdiction over the custody matter. Respondents have not pointed to any authority, from the ICARA or any other binding precedent, that clearly shows that this court retains subject matter jurisdiction under this circumstance.

Respondents' second argument is equally faulty. Respondents themselves point out that the Hague Convention provides "a forum selection mechanism, operating on the principle that the child's country of habitual residence is best placed to decide upon questions of custody and access." (Doc. 58, p. 10 (citation omitted).) But paragraph P(ii) of the Consent Order addressed just that issue. (Doc. 42, p. 16.) There, the parties agreed that Israel is the minor child's habitual residence, which is best placed to decide upon questions of custody and access.

Now, Respondents seek to retract their consent regarding the forum selection for determination of custody. They consented in paragraph P(ii) of the Consent Order to transfer all questions of custody to "the appropriate jurisdiction in Israel." Now, through their motion for contempt, they seek to enforce the custody terms of

the Consent Order before this court. And they argue that this court retains jurisdiction over this action as a Hague Convention proceeding and therefore has the power to enforce the custody terms of their Consent Order. But the power to enforce a custody agreement is not one provided by the Hague Convention and enabled by the ICARA. And, aside from the Hague Convention and enabling statute, the court has no source of subject matter jurisdiction over this dispute.

In sum, Respondents have not established that this court has subject matter jurisdiction given the procedural posture of this case. Because they have failed to meet their burden, and because the court is unaware of any other authority conferring subject matter jurisdiction over the instant dispute–which in reality is a custody dispute–the court will grant Saydlin's motion to dismiss.

## CONCLUSION

For the reasons explained in this memorandum, the court determines it does not have subject matter jurisdiction over this action. Therefore, the court will grant the motion to dismiss. (Doc. 54.) An appropriate order will issue.

s/Jennifer P. Wilson  
JENNIFER P. WILSON  
United States District Judge  
Middle District of Pennsylvania

Dated: February 23, 2024